Bowen, J.
The remedy by bill of review is a well known proceeding in chancery, and lies for errors appearing in the record, or for evidence which has been discovered since the decree was entered, and which, when properly applied, may servé to correct or change it in some material respect. It must be brought before the same court which decided the original cause, and can only be sustained after final decree made.
The chancery practice act of 1831, section 54 (Statutes of 1841, p. 714), confers the right on any one who was a party to 'a decree, or his representatives, at any time within five years after its date, to “ file a petition for a review of the proceedings in which such former decree was rendered.” ■ Beyond the authority to prefer the petition, the manner pointed out Of obtaining a stay of proceedings till the review can be heard, and the mode of bringing parties into court, there is very little instruction given in the statute as to any other *151, 152 151 proceeding to be observed. We are left to ^pursue the practice of the courts of chancery so far as it may be applicable to our institutions, and we readily adopt for our guide, principles which have been established by the usage of those tribunals as safe precedents to follow, and we usually feel much security in conforming-our orders and decrees to them.
It is urged by counsel for defendants that there had been no final decree rendered when this bill was filed — that after the order of reversal, the cause was remanded to the inferior court to be further proceeded in, and consequently that nothing remained in this court to be reviewed; the original papers having passed into the court of common pleas, to enable that forum to make a proper and complete determination of the subject-matter involved in them. This argument is met by the assumption that the sole power of the court, over the proceedings and papers in review, was exhausted when the decree of reversal was rendered, that nothing further remained to be done except to remand them to the common pleas, or retain them here for decision on their merits, and, therefore, that the act of reversal was a finality — a conclusion of the controversy thus raised, and of the complainant’s rights, as fully as they could be affected by that proceeding ; and that a party, who deems himself injured, may, without awaiting the further progress and final ending of the cause in the court below, have a review of the reversing decree, and a confirmation of the original decree, and thus be restored to what he has lost by the erroneous reversal.
If this difference between the parties were settled by any known usages of chancery, as evidenced by books of authority, we should, feel relieved from the hazard of declaring a rule which may seem to conflict with the doctrine of elementary writers, and would quite willingly pursue the path which others have trodden, rather than 152] incur *such hazard. But in the absence of any well settled, authoritative adjudication relative to the point made, we are constrained to adopt what seems to us a reasonable, if not in fact the only, view which can be sustained, and leave the case unembarrassed by future grave difficulties.
Mitford, in his treatise on Chancery Pleadings, page 88, lays down this rule: “ If upon a bill of review, a decree has been reversed, another bill of review maybe brought upon the decree of reversal;” and refers to Neal v. Robinson, Dickens, 15, and to Chan. Prac. 633. Cooper, in his work on Chancery, page 92, makes the same general *153 remark, and refers to the same authorities, and to Redesd. Tr. Ch. Plead. 79. Maddox, Story, and Adams reiterate the doctrine, and ■give the same references to support it.
The book of Chancery Precedents and Practice referred to, we have not been able to examine. It is not to be found in the libraries to which we have had access. What rule it indicates, or what form it furnishes, we have not the means of knowing. It is believed, however, that he origin of the passage in Mitford, which is ■copied by many of the elementary writers on chancery practice, may be traced to Neal v. Robinson. It is the only reported case referred to by any of them. In order to know whether the principle promulgated by them is sustained, or was, in fact, ever announced by a court, we here quote from 1 Dick. 15, the case in full as it there appears:
“ Neal v. Robinson [November, 1683], (Reg. Lib. B. B., fol. 168.) Bill of Review reheard.”
A case more meagerly reported can not, perhaps, be found. It contains but a simple sentence, which fails, certainly, to authorize the doctrine in Mitford. It shows that a bill of review had been reheard. The court which had rendered or was asked to render a ■decree of reversal, wo infer, listened again to arguments touching the *propriety of the reversal. That may have been on'peti- [153 tion filed, or on re-argument ordered by the court. The same may be done here. That actually was attempted in this case. A petition for rehearing was filed, but the court declined to again hear and pass upon the bill of review. The case in Dickons was, doubtless, of that character; the court being satisfied that the question ought to bo further considered. There is not, to our comprehension, much .similarity between that reported decision and the dictum put forth in Mitford. No other authority has been quoted by counsel, and we have not been able to find any bearing upon the point.
In Strader v. Byrd, 7 Ohio, 184, the court experienced the same difficulty now encountered, in finding authorities- to sustain the bill then under consideration, which had been filed to review the decree of the Supreme Court, on appeal from an order of reversal of the court of common pleas, but finally settled down in a doctrine that a bill of review will not lie after two concurrent decrees have been made by courts possessing a proper jurisdiction to render them, and turned the complainant out of court by dismissing his bill. The syllabus of this case is printed as follows: “A decree *154 upon a bill of review can not be again reviewed in a second bill of review.” It is worthy of remark that there had been a final decree 'made in this case, before any attempt was made to review it.
By our statutory practice, as well as that which,- independent of it, prevails in courts of chancery, no review of a decree, either on appeal or by bill filed, can be had until such decree, in its terms or operation, becomes final. While it is interlocutory in its form, or there remain any rights to be settled, or further proceedings to be had between the parties, no such remedy is allowed. The litiga154] tion must be ended so as to leave no other question or *direetion for the future judgment of the court. There must be a disposal of the whole merits of the cause, and the suitors out of court, before a decree can acquire that characterof finality, which subjects it to review. Statutes of 1841, 743, secs. 52, 54; Mills v. Hoag, 7 Paige, 18; Bowyer v. Lewis, 1 Hen. & Munf. 553. It must also possess the additional quality of being a bar between the parties, which either may plead to any new bill for the same matter. 2 Dan. Ch. Prac. 1190, and notes.
Now, to test the case before us by the application of this undeniable and well recognized doctrine, how will it stand ? This court has reversed the decree of the common pleas in a ease which, upon its face, clearly shows that justice can not be done without further proceedings are had in it. An error which intervened in the latter court, deserved, in the opinion of this court, to be corrected, and the defendants, who claimed to be injured by it, to be placed in statu quo, or, it other words, permitted to answer and make defense. It was apparent that such decree, when set aside, would leave valuable, though controverted rights'of property undetermined. Hence, it was the duty of the court, in its efforts to administer impartial and adequate relief, to provide for the settlement by future decree,, of all such question as might be opened or unsettled by the reversal. This, it might have accomplished by retaining the cause in this court for decree, or by remanding it to the court below for such further proceeding as was proper. The latter course was chosen. It went back to the common pleas. New parties have been made, and new questions raised in it, and it is either now pending, or has been terminated in that tribunal. While it is thus standing undecided upon its merits, or after another decree predicated upon and required by our mandate, and-which cures the mischiefs which crept into the former decree, by means of error com *155, 156 mitted, *has been signed and enrolled, as for aught we know [15ft may be the fact, we are asked to reverse the decree which has accomplished, or may produce these results, and to do this upon the theory that the reversal was a final decree, and that we can not regard the remanding of the cause — the redocketing of it for hearing —the filing of a supplemental bill — the introduction of new parties on the record — the filing of answers by defendants, and the taking of new proofs, as a continuation of the subjects litigated, nor as matters bearing relation to, and as being inseparable from, the decree itself; nor are we at liberty to regard these unavoidable and unnecessary incidents of it, in solving the query, whether it be final or interlocutory in its nature. , But it is insisted that we should, in framing conclusions upon the effect of that decree, in order to satisfy ourselves whether it bo of such character as may be reviewed, keep out of mind these considerations, and wholly disregard the fact whether other proceedings, incidental to the reversal, are in progress between the parties.
We are disinclined to adopt this restricted mode of answering the proposition, for we are met, full in the face, with what seems to-us the inflexible objection that the litigants and their cause are yet in court, invoking the'chancellor’s adjudication between them, upon controverted questions of right. We are not able to place the decree, now sought to be reviewed, upon ground so • exclusively isolated from and independent of an important branch of itself It can not be severed from the parent which,, gave it birth, but must continue one of its offspring, bearing an indissoluble relation to it — each being a part of the other. It seems to us to be interlocutory in its main object, intended to serve the simple office of correcting an error, and of commanding further action to be had to relieve those who were injured by it; in short, to prepare the way *for settling anew, and upon a more correct basis, all quesi [156 tions of right and of equity, between complainant and defendants, by avoiding the mistakes which introduced impure and unconscionable principles into the former decree. It seeks no other end, and should serve no other purpose.
How, then, can it with propriety be said, while the court below is proceeding to carry out this design, that the foundation for a review has been laid ? After the court which now holds jurisdiction of the cause shall conclude its charge over it, by a final determination the merits, there be no cause of complaint by *157 any party to tbe proceeding. That ruling which shall comport strictly with principles of equity, it is to be presumed, will bo administered, and with that all should be satisfied. It is due to that tri bunal to await its determination of the matters remanded to it for decision. If a bill of review shall then be deemed necessary, the objection now urged will be removed.
W e do not intend to say that a bill will not lie in any case to review a decree of reversal. There may be instances in which a decree would be final between the parties — a conclusion of the merits in controversy. Where this occurs the review may lie, if .there be no other objection. Such was the case of Strader v. Byrd, 7 Ohio. The order sought to be reviewed was a decree of dismissal of the original bill. That had put an end to the proceeding, and the parties were out of court. This is deemed to be a final decree, and the text-books may speak correctly in laying down the doctrine that such bills may be filed, if they refer to that class of cases; but outside of that description of decrees, it can not, as we think, ■ upon principle, be made to apply. A decree of dismissal is final, unless it be made without prejudice. 2 Dan. Ch. Prac. 1200.
*Having failed to find any authority in the chancery books to warrant the filing of the bill now before us, and, indeed, having failed, almost entirely, to find any decision on the subject of bills filed under similar circumstances, we are led into an examination of proceedings at law, between which and causes in chancery there may be some analogy to support the view we take.
A writ of error to a judgment at law, and a bill of review to a decree in chancery, alike seek the correction of errors. They may, by our statute, each be prosecuted within five years from the date of the judgment or decree. The writ of error is hoard, usually, in a different court from that which rendered the j udgment. A bill of review is filed in the same court which pronounced the decree. In both, the uniform practice, after reversal, is to subject the matters in dispute to further judicial action, either by remanding the cause to the inferior court, from which it was removed by appeal, for such action, or by retaining it for disposal in the same court which ordered the reversal. Neither the judgment nor the decree is 'final, while any thing further remains to be done in that suit between the parties. If the effect of the reversal, in view of the grounds upon which it is predicated, be such as to close, at that stage, the litigation of the parties, and to send them out of court, *158, 159 without the power to recommence another action for the same •cause, it is quite clear that, in either case, the remedy in error will lie to such final adjudication, but not otherwise.
In Reed v. Dewolf, Wright (S. C.), 418, the judgment of a justice of the peace was reversed by the court of common pleas, and the cause set down for hearing in the latter court. While pending there, for trial; a writ of error was brought in the Supreme Court to reverse the judgment of the common pleas, and to affirm that •of the justice. The *court say that the writ of error will only [158 bring up the record of a final judgment, and if it appear that the cause is still pending in the court below, the writ must be quashed, as none other than a final judgment can be reached on error.
In Herf v. Shultz, 10 Ohio, 268, the court say that writs of certiorari are not allowed in Ohio, by the Supreme Court, until the cause is finally disposed of in the court below. The same point is , ruled in Kelly v. Hunter, 12 Ohio, 216.
Although we do not claim perfect anology between proceedings .at law and in chancery, in the form of error, yet it must be conceded that much of the reasoning which prohibits the courts from entertaining any jurisdiction of writs of error while the case is pending and undetermined in the court below, is equally applicable to bills of review. If, for example, the judgment of the court of common pleas, rendered by default, were reversed by this court, because the defendant was insane at the date of the judgment, and a procedendo sent to that court, commanding it to proceed to the further hearing of the cause, no one will pretend that a writ of error would lie to the judgment of reversal. Why? Because there has been no final judgment given. The cause is pending, and, notwithstanding the power of the court has been exhaustedj under the petition in error, and as to that, a final judgment rendered, yet the suit must progress further; and until that progress is complete, by a final termination of the issue formed, the remedy by error can not be had against the judgment of reversal. It is difficult to perceive any reason for the observance of this rule as to judgments, which does not apply with equal force to decrees in chancery. The effect of a review of a former reversal, during the continuance of litigation in the ease, would be the same as to both. ^Another judgment, or decree, might in the court below, be [159 rendered, pending the proceedings in error, which would differ from, or be inconsistent with the one which would be reinstated, *160 and thus present the absurdity of the existence of two judgments, or decrees, on the same subject-matter, in the same court, liable to be enforced at the same time, and without any known judicial power to declare which shall take precedence, as res adjudicata, or which shall prevail against the other. After judgment or decree, in the sense hereinbefore defined, no such difficulty will arise in the way of proceedings in error, to reverse either judgments or decrees ; and hence the necessity of following the practice, so well maintained at law, of carrying the cause to final judgment or decree, before attempting to review it,
A majority of the court concur, for the reasons given in the opinion, that this bill can not be sustained, and that the pleas should, therefore, be allowed, and the bill dismissed.
Bartley, C. J., and Brinkerhoee and Scott, JDT., concurred.
Swan, J., dissented.